UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SM PREMIUM IMPORTS LLC,
                          Plaintiff,

-v-

CENTRE VINICOLE CHAMPAGNE
NICOLAS FEUILLATTE, *et al.*,
                          Defendants.

25-CV-2248 (JPO)

MEMORANDUM AND ORDER

---

J. PAUL OETKEN, District Judge:

Defendant Terroirs & Vignerons de Champagne, for itself and on behalf of the entity sued as Centre Vinicole Champagne Nicolas Feuillatte (collectively "TEVC"), moves for leave to amend its answer. (ECF 24.) Plaintiff SM Premium Imports LLC ("SM Premium") opposes the motion. (ECF No. 32.) For the reasons that follow, TEVC's motion is granted in part and denied in part.

**I.    Background**

    **A.    Factual Background**

SM Premium is a premier importer, distributor, and marketer of fine wines on behalf of itself and its partners. (ECF No. 1 ("Compl.") ¶ 7.) In September 2021, TEVC and non-party Ste. Michelle Wine Estates LLC executed a contract ("Contract") with an effective date of January 1, 2022, wherein SM Premium was designated as the exclusive importer and distributor of TEVC's wines in the United States. (*Id.* ¶ 16.) Eventually, SM Premium was assigned Ste. Michelle Wine Estate's rights under the Contract. (*Id.* ¶ 17.) SM Premium and TEVC operated under the Contract for several years, with SM Premium distributing TEVC's wines throughout the United States. (*Id.* ¶ 24.) The Contract expired by its terms on December 31, 2024, at which time TEVC transitioned to a new distributor. (*Id.* ¶¶ 27, 30.)

1

The Contract contained several requirements related to the division of marketing expenses. (*See generally* ECF No. 1-1.) Relevant to this case, the parties were to collectively develop an annual sales and marketing plan and a marketing budget for the following calendar year. (Compl. ¶ 18.) The parties agreed that TEVC would reimburse SM Premium on a quarterly basis. (*Id*. ¶¶ 19.) The parties dispute the formula used for this reimbursement. According to SM Premium, TEVC was required to reimburse one half of SM Premium's expenditures on all marketing activities that it incurred (the "50% Formula") in accordance with each approved marketing plan that must be paid within sixty days of SM Premium's transmitting its invoice to TEVC. (*Id*. ¶¶ 19, 20.) Alternatively, according to TEVC, the reimbursement to SM Premium was limited to 10% of the value of shipments from TEVC to SM Premium commercialized during each year (the 10% Formula), without regard to the amount of actual marketing expenses SM Premium incurred. (ECF No. 24-3 (Amen. Ans.) ¶ 5.)[1]

In October 2024, SM Premium remitted to TEVC an invoice in the amount of $282,569.47, accounting for half of the third quarter marketing expenses ("Q3 Invoice"). (Compl. ¶ 28.) TEVC did not pay the Q3 Invoice. (*Id.* ¶ 29.) Even so, SM Premium assisted TEVC as it transitioned to a new distributor, all while SM Premium continued to seek payment for the Q3 Invoice calculated under the 50% Formula. (*Id.* ¶¶ 30, 31.) On or about January 23, 2025, TEVC communicated to SM Premium that it would not be fulfilling its repayment obligations for any future invoices, including any invoices to come for the fourth quarter marketing expenses incurred by SM Premium ("Q4 Invoice"). (*Id.* ¶¶ 32, 33.) Still, SM Premium transmitted its Q4 Invoice on or about February 28, 2025, amounting to $458,280.04 under the 50% Formula. (*Id.* ¶ 34.) Again, TEVC refused to pay. (*Id.* ¶ 34.) As of the date of

---

[1] Unless otherwise noted, "Amen. Ans." refers to TEVC's Counterclaims section.

filing, TEVC had not paid the amounts due and owed under either the Q3 Invoice or the Q4 Invoice. (*Id.* ¶ 35.)

    **B.**    **Procedural Background**

SM Premium filed its claims on March 18, 2025, alleging (1) breach of contract; (2) account stated; (3) unjust enrichment; and (4) breach of the implied covenant of good faith and fair dealing. (Compl.) On May 19, 2025, TEVC filed its answer, raising affirmative defenses but asserting no counterclaims. (ECF 12.) On July 17, 2025, TEVC filed its Motion to Amend, seeking to add four counterclaims and an affirmative defense for setoff. (ECF 24-3.) Specifically, TEVC seeks to assert counterclaims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unjust enrichment; and (4) fraud. (*Id.*)

**II.**    **Legal Standard**

After the time expires for amending a pleading as of right, Federal Rule of Civil Procedure 15(a)(2) provides that a party "may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008).[2]

---

[2] Because TEVC's motion was timely, TEVC is not required to meet the good cause standard to prevail on its motion for leave to amend. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (emphasis added) (holding that where a party seeks leave to amend "*after* the deadline" established by a scheduling order issued pursuant to Rule 16(b), the Court may deny leave to amend "where the moving party has failed to establish good cause"); *see also* Fed. R. Civ. P. 16(b).

**III.   Discussion**

SM Premium does not argue that leave to amend should be denied as to TEVC's affirmative defense under the doctrines of setoff and recoupment. (ECF No. 32 ("SM Mem.") at 18 ("SM Premium respectfully requests that the Court deny the Motion to Amend as to the *putative Counterclaims*.") (emphasis added).) So, the Court grants TEVC's motion for leave to amend to include its affirmative defense. *See Robledo v. Number 9 Parfume Leasehold*, No. 12-CV-3579, 2013 WL 1718917, at *4 (S.D.N.Y. Apr. 9, 2013) ("[T]o the extent [a party does] not contest [the opposition's] proposed amendment, the Court will allow it.").

SM Premium argues that leave to amend should be denied as to TEVC's counterclaims, because (1) TEVC's amendment would cause undue prejudice to SM Premium and (2) TEVC's counterclaims introduced in amendment are futile. This Court considers each argument in turn.

**A.   Undue Prejudice**

SM Premium argues that the addition of TEVC's counterclaims would burden SM Premium by both "opening the scope of discovery" and "by delaying resolution of what should be a very simple matter." (SM Mem. at 17.)

SM Premium has not established that it will suffer any undue prejudice should this Court grant TEVC's leave to amend. "Mere delay . . . absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 294 (S.D.N.Y. 2019) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). Here, though TEVC's amendment may result in a slight delay, it will not unduly prejudice SM Premium. The proposed counterclaims are closely related to the original claims asserted in SM Premium's complaint. *See Fluor Corp.*, 654 F.2d at 856 (denying a claim of undue prejudice from delay when the amended claim was related closely to the original claim of the plaintiff's complaint). Moreover, where the "amendment does not

4

necessitate any further discovery because it arises from the same transaction as the claims in the original complaint," it would not prejudice the non-moving party or unduly delay the litigation. *Ohio Cas. Ins. Co. v. Transcontinental Ins. Co.*, No. 05-CV-6432, 2006 WL 1540540, at *1 (S.D.N.Y. May 31, 2006). Given the close relation of the amendment to the original complaint, the scope of fact discovery will significantly not expand. *See BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 866 F. Supp. 2d 257, 273 (S.D.N.Y. 2012) (holding that courts have found no prejudice where an amendment does not necessitate any additional discovery). Thus, this Court finds no undue prejudice imposed on SM Premium by permitting amendment.

### B.     Futility

"Leave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010). Courts evaluate a proposed amended pleading challenged on futility grounds under the Rule 12(b)(6) standard for a motion to dismiss for failure to state a claim. *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Thus, a motion to amend that is challenged on futility grounds must show that the proposed amended pleading pleads "factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The parties do not dispute that per the Contract, New York law governs its terms. (*See* SM Mem.; ECF No. 33 ("TEVC Mem.").) The Court therefore applies New York contract law. *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) ("[If t]he parties' briefs assume that New York substantive law governs the issue[] . . . such implied consent is, of course, sufficient to establish the applicable choice of law." (citation omitted)).

5

1.  **Breach of Contract**

In New York, "[t]o make out a viable claim for breach of contract a '[counterclaim] need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the [counterclaim-plaintiff], (3) breach of contract by the [counterclaim-defendant], and (4) damages.'" *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).

TEVC's pleading in its first counterclaim is sufficient to allege a breach of contract. First, TEVC's breach of contract counterclaim alleges the existence of an agreement. (*See* Amen. Ans. ¶ 1 ("SM Premium and TEVC were parties to an Import and Distribution Agreement [the Contract].")  Second, TEVC alleges adequate performance of the Contract. (*See id.* ¶ 5 ("TEVC acted in conformity with [the Contract]. . . . TEVC reimbursed SM Premium . . . .").) Finally, TEVC alleges breach of the Contract and damages by stating that "if SM Premium is correct that the [Contract] limits reimbursement to [the 50% Formula]," the amounts that TEVC reimbursed SM Premium during certain years exceeded the amount owed under the 50% Formula. (*Id.* ¶ 18.)  Thus, "SM Premium breached the [Contract] by demanding more reimbursement than contractually permitted." (*Id.*)  In other words, TEVC alleges that *if* the 50% Formula governs marketing reimbursement between the parties, then TEVC should recover for earlier periods—2022 and 2023—when the 10% Formula was improperly used, which resulted in TEVC overpaying SM Premium. (*Id.*)

Although TEVC's breach of contract counterclaim lacks certain details, such as specific dates, it does more than offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  At this stage, TEVC's breach of contract pleadings are sufficient to survive Rule 15's futility

standard, particularly as the standard governing motions to amend is a "permissive" one that is informed by a "strong preference for resolving disputes on the merits." *See Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir.2011) (citing *New York v. Green,* 420 F.3d 99, 104 (2d Cir.2005)); *see also Pangburn v. Culbertson*, 200 F.3d 65, 70 (2d Cir. 1999) (referring to the "relaxed standard" for motions to amend).

### 2. Breach of the Covenant of Good Faith and Fair Dealing

Under New York law, all contracts contain an implied covenant of good faith and fair dealing, which encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." *Dalton v. Educ. Testing Serv.*, 639 N.Y.S.2d 977, 979 (1995) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 412 N.Y.S.2d 827, 831 (1978)). This implied covenant includes a "pledge that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Id*. (quoting *Kirke La Shelle Co. v. Armstrong Co.*, 263 N.Y. 79, 87 (1933)).

"A cause of action to recover damages for breach of the implied covenant of good faith and fair dealing cannot be maintained where the alleged breach is 'intrinsically tied to the damages allegedly resulting from a breach of the contract.'" *Deer Park Enters., LLC v. Ail Sys., Inc.*, 870 N.Y.S.2d 89, 90 (2d Dep't 2008) (quoting *Canstar v. Jones Constr. Co.*, 622 N.Y.S.2d 730, 731 (1st Dep't 1995)).

Here, TEVC alleges that SM Premium breached its duty of good faith and fair dealing when it "billed for and was reimbursed amounts in excess of 50% of [the] actual expenses [it incurred] under what TEVC was led by SM Premium to be the parties' accepted understanding and modification of the [Contract]." (Amen. Ans. ¶ 29.) This allegation—that SM Premium was reimbursed in 2022 and 2023 for marketing costs under the 10% Formula, which resulted in an

7

overpayment by TEVC—is identical to the alleged breach of contract. Because "the conduct and resulting injury alleged" in the second cause of action for breach of the covenant of good faith and fair dealing "are identical to those alleged in the first . . . cause[] of action alleging breach of contract," the second cause of action must be deemed futile as it is duplicative. *Deer Park Enters.*, 870 N.Y.S.2d at 90.

### 3.  Unjust Enrichment

As with breach of the covenant of good faith and fair dealing, where a relationship between parties is "contractual in nature" and a "claim for unjust enrichment is based on the same set of facts and seeks to recover the 'value of enrichment' based on the same [issues] as the claims for breach of contract[,]" an "unjust enrichment claim is precluded as duplicative." *Aubrey v. New Sch.*, 624 F. Supp. 3d 405, 423-24 (S.D.N.Y. 2022).

Consequently, TEVC's unjust enrichment counterclaim is easily dismissed, as the counterclaim rests on the same factual allegations as its breach of contract claim. (*Compare* Amen. Ans. ¶ 18 ("SM Premium breached the [Contract] by demanding more reimbursement than contractually permitted."), with Amen. Ans. ¶ 39 ("SM Premium received benefits conferred on it as a result of . . . its billing of TEVC for amounts . . . in excess of the amount required under the [Contract].").)

TEVC argues that it may plead unjust enrichment in the alternative at this stage of litigation (TEVC Mem. at 12-13), but the New York Court of Appeals has made clear that "unjust enrichment is not a catchall cause of action to be used when others fail," *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012). "Relying on *Corsello*, courts in this District have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that

8

they shared a contractual relationship." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 430 (S.D.N.Y. 2021) (collecting cases).  Consistent with this precedent, TEVC's unjust enrichment counterclaim is futile.

### 4.     Fraud

To maintain an action of fraud arising from a contractual relationship, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted).  Thus, as with breach of the implied covenant and with unjust enrichment, "[f]raud may not be pleaded in the alternative to a breach of contract claim, as '[i]t is well settled under New York law that a party cannot maintain overlapping fraud and breach of contract claims[.]'" *Kitchen Winners NY Inc. v. Rock Fintek LLC*, 668 F. Supp. 3d 263, 291 (S.D.N.Y. 2023) (citing *Maricultura Del Norte v. World Bus. Cap., Inc.*, 159 F. Supp. 3d 368, 377 (S.D.N.Y. 2015) (alteration and citation omitted)).

Again, TEVC's amended counterclaim's fraud allegation is premised upon the alleged breach of contractual duties.  (Amen. Ans. ¶¶ 43-54 ("To the extent that SM Premium invoiced TEVC for marketing expenses in excess of 50% of its actual expenses, it misrepresented the value of its marketing expenses with the intent to defraud TEVC.").)  Thus, TEVC's fraud claim is futile.

It is true, as TEVC asserts, that "under New York law, parallel fraud and contract claims may be brought" if the former claim "points to a fraudulent misrepresentation that is collateral or extraneous to the contract." (TEVC Mem. at 11 (citing *Merrill Lynch & Co. Inc. v. Allegheny*

9

*Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007).) TEVC relies on *Rojas v. Cigna Health and Life Insurance Co.*, No. 14-CV-6368, 2018 WL 4759775 (S.D.N.Y. Sep. 29, 2018), to argue that like in *Rojas*, SM Premium "is alleged to have defrauded TEVC by collateral and extraneous misrepresentations in the form of fraudulent invoices." (*Id.* at 12 (citing *Rojas*, 2018 WL 4759775, at *6).) In *Rojas*, the defendants' counterclaims alleged misrepresentations and omissions of material facts that were separate and apart from the plaintiffs' failure to adhere to the terms of a contract. *Rojas*, 2018 WL 4759775, at *6. Here, by contrast, the alleged misrepresentation of the value of SM Premium's marketing expenses through fraudulent invoices goes directly to SM Premium and TEVC's contractual obligation to charge and reimburse based on an agreed-upon formula. Thus, granting TEVC's leave to amend to include its fraud allegation would be futile.

**IV.    Conclusion**

For the foregoing reasons, TEVC's motion for leave to amend its answer is GRANTED in part and DENIED in part. TEVC is granted leave to file its proposed Amended Answer with only the first of its proposed counterclaims (breach of contract). It shall file its Amended Answer consistent with this order within seven days. SM Premium shall file its answer to the counterclaim within 14 days of the filing of the counterclaim.

The Clerk of Court is directed to close the motion at Docket Number 24.

SO ORDERED.

Dated: October 14, 2025
       New York, New York

_____
J. PAUL OETKEN
United States District Judge